**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MIKE PITTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-CV-96-GKF-PJC |
| ) | |
| ELECTRICAL POWER SYSTEMS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**O P I N I O N   A N D   O R D E R**

This matter comes before the Court on the Motion to Dismiss filed by defendant Electrical Power Systems, Inc. ("EPS") [Document No. 8].

**I. Background**

Plaintiff Mike Pitts ("Pitts") was unexpectedly terminated from EPS's employment on October 26, 2007. Pitts alleges that EPS terminated him because he requested medical leave in order to undergo and recover from a surgery scheduled for November 7, 2007. The surgery would be the second within a one-year period for Pitts, who was injured after being struck by a drunk driver. Pitts was terminated eleven (11) days before his second surgery was scheduled to occur. Pitts claims that EPS violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, when it failed to (i) provide him with information or notice regarding the provisions of the FMLA; (ii) notify him as to whether he was eligible for FMLA leave and whether his proposed medical leave was covered by the FMLA; and (iii) explain to him the requirements and obligations under the FMLA. In addition, Pitts claims that EPS violated the FMLA by (iv) retaliating against him for requesting medical leave and (v) terminating him in an effort to avoid the costs associated with his medical leave.

More relevant to the present motion is Pitts' alternative explanation for his termination: That EPS fired him "in an attempt to prevent him from becoming a 'whistleblower.'" (Complaint, ¶ 15). Approximately one week before Pitts was terminated, he learned that EPS's General Manager improperly formed and maintained a "slush fund" containing approximately $500,000. The alleged "slush fund" consisted of two separate accounts containing money that was not reported for purposes of quarterly earnings or income taxes. Pitts states that he "was considering filing an SEC notification." (*Id.*). Absent from the Complaint are any allegations as to whether, prior to Pitts' termination, anyone at EPS knew that he was considering filing an SEC notification. Nevertheless, Pitts contends that EPS terminated his employment because it "became convinced and concerned that [Pitts] would become a 'whistleblower' and report the illegal 'slush fund.'" (*Id.*). In this regard, Pitts claims his termination was contrary to Oklahoma's public policy, constituting a violation of what has become recognized as the *Burk* tort.

In addition to his claims for (1) violation of the FMLA and (2) wrongful termination in violation of public policy, Pitts also asserts claims against EPS for (3) negligence and (4) negligent and/or intentional infliction of emotional distress. Pursuant to Fed. R. Civ. P. 12(b)(6), EPS seeks dismissal of Pitts' claims for wrongful termination in violation of public policy and negligent infliction of emotional distress.

## II. Analysis

When deciding a motion to dismiss for failure to state a claim, "courts should look to specific allegations in the complaint to determine whether they plausibly support a claim for relief." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n. 2 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, --- U.S. ---, ---, 127 S.Ct. 1955, 1964-65 (2007)). For purposes of this analysis, courts

must "accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Calderon v. Kansas Dept. of Social & Rehabilitative Services*, 181 F.3d 1180, 1183 (10th Cir. 1999); *see also Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).

### A. Wrongful Termination in Violation of Public Policy

The Oklahoma Supreme Court created a narrow exception to the doctrine of at-will employment when it adopted a cause of action for employees who are discharged in violation of Oklahoma's public policy. *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla. 1989). The cause of action, known as a *Burk* tort, exists "where an employee is discharged [1] for refusing to act in violation of an established and well-defined public policy or [2] for performing an act consistent with a clear and compelling public policy." *Id.* A *Burk* tort applies only in a narrow class of cases and must be tightly circumscribed. *Id*.

In order to prevail on such a claim, a plaintiff must identify "an Oklahoma public policy goal that is clear and compelling and articulated in existing constitutional, statutory or jurisprudential law." *McCrady v. Oklahoma Dept. of Public Safety*, 122 P.3d 473, 475 (Okla. 2005) (citing *Clinton v. State ex rel. Logan County Election Bd.*, 29 P.3d 543, 546 (Okla. 2001)). Whether a plaintiff has identified a clear mandate of Oklahoma public policy is a question of law to be resolved by the court. *See e.g. Clinton*, 29 P.3d at 546; *McCrady*, 122 P.3d at 475; *Hayes v. Eateries, Inc.*, 905 P.2d 778, 785 (Okla. 1997). "[C]ourts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy." *Burk*, 770 P.2d at 29 (quotation omitted).

The central problem in most whistleblower cases is determining whether the plaintiff has

identified a clear and compelling Oklahoma public policy about which he may legitimately complain. *Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001). In the present case, however, it is unnecessary to reach this determination. There is a more fundamental *Burk* requirement lacking – any allegation that Pitts (1) *refused to act* in violation of an established and well-defined public policy, or (2) *performed an act* consistent with a clear and compelling public policy. *Burk*, 770 P.2d at 29. Taking all of the allegations in the Complaint as true, Pitts did neither (*i.e.*, he did not refuse to participate in the formation or maintenance of the slush fund, nor did he report the slush fund either internally or externally). Pitts simply *knew* of the slush fund. Oklahoma has not extended the *Burk* tort to plaintiffs who merely have knowledge of their employer's improper acts.

In opposition to the motion to dismiss, Pitts relies on six post-*Burk* decisions involving claims for wrongful termination in violation of public policy. As discussed below, each of these cases confirms this Court's conclusion that an act or refusal to act by the plaintiff is necessary to state a *Burk* claim.

The most recent case cited by Pitts, *Darrow v. Integris Health, Inc.*, 2008 OK 1, — P.3d — (Okla. 2008), involves a plaintiff who reported possible Medicare fraud. The court stated that "[e]mployees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further the public good by unmasking these breaches should be protected from an employer's retaliation." *Darrow*, 2008 OK 1, ¶ 19. In the present case, Pitts did not report or complain of his employer's unlawful acts and did not take actions to further the public good by unmasking the wrongdoing.

In another case cited by Pitts, *Barker v. State Ins. Fund*, 40 P.3d 463 (Okla. 2001), the plaintiff reported and complained of mismanagement. The Oklahoma Supreme Court determined

that both internal and external whistleblowers can assert a *Burk* tort, explaining that one of the goals of protecting whistleblowers from retaliatory discharge is to reduce wrongdoing in a speedy, efficacious manner. 40 P.3d at 468. Again, contrary to the facts of *Barker*, Pitts did not report his employer's alleged wrongful acts. Absent reporting, the goal of reducing the employer's wrongdoing is not accomplished. Also, absent any action by the employee, the employer cannot be motivated by retaliation.

The plaintiff in *Hayes v. Eateries, Inc.*, 905 P.2d 778 (Okla. 1995), reported and investigated criminal activity by a co-employee against his employer. The Oklahoma Supreme Court confirmed that a public policy tort may arise where an employee is discharged for (1) *refusing to act* in violation of an established and well-defined public policy, or (2) *performing an act* consistent with a clear and compelling public policy. The *Hayes* court stated that a plaintiff must establish one of these two "branches." 905 P.2d at 785. Because the plaintiff's reporting in *Hayes* was not made to vindicate his own interests nor those of the general public, he could not rely on the public policy exception to the at-will employment rule. *Id.* at 786. Again, contrary to *Hayes*, there was no reporting by Pitts in this case.

In *Gabler v. Holder and Smith, Inc.*, 11 P.3d 1269 (Okla. Civ. App. 2000), the plaintiff reported his employer's dual bookkeeping system and refused to reproduce university parking passes, which the plaintiff thought was illegal. Similarly, in *Crain v. Nat'l Amer. Ins. Co.*, 52 P.3d 1035 (Okla. Civ. App. 2002), the plaintiff complained to his supervisors and reported to outside auditors that his employer was falsifying its financial records. Finally, in *Vannerson v. Bd. of Regents of the Univ. of Okla.*, 784 P.2d 1053 (Okla. 1989), a *Burk* claim was present where the plaintiff, an employee of the University of Oklahoma, went over his supervisor's head to report that

he witnessed an unlawful transfer of state property.

Pitts has not pointed to any authority that extends, or even suggests an extension of, the *Burk* tort to whistleblower cases in which the plaintiff has knowledge of an improper act but takes no action in connection with such knowledge. Rather, each of the cases cited by Pitts underscores *Burk*'s explicit holding that the public policy tort arises where an employee either acts in a manner consistent with public policy (*i.e.* the employee reports, complains, or exposes the conduct), or refuses to act in violation of public policy. Without some form of reporting action on the part of Pitts after he learned of the slush fund, the goal of the *Burk* tort in whistleblower cases is not satisfied. There is no advancement of public policy, nor is there any "unmasking" or reduction of the employer's wrongdoing.

Pitts asks the court to "assume" that he "would have 'blown the whistle' but for his termination." Pitts also asks the Court to assume that EPS fired him in an effort to prevent him from whistleblowing. These assumptions, however, are not supported by Pitts' factual allegations. Pitts had the opportunity to, but did not, blow the whistle. Pitts was not terminated immediately upon learning of the slush fund, but rather approximately one week later and after he considered, but did not carry out, the filing of an SEC notification. Moreover, there are no allegations that anyone within EPS knew that Pitts was considering filing an SEC notification.

Because there are no allegations that could plausibly support Pitts' *Burk* claim, the Court concludes that EPS's motion to dismiss Pitts' second cause of action for wrongful termination in violation of Oklahoma's public policy should be granted. While EPS also argues that Pitts has not identified a clear and compelling mandate of Oklahoma public policy upon which to rest his *Burk* claim, this Court need not decide that issue. As noted above, Pitts has failed to allege facts that invoke the *Burk* tort in the first instance.

### B. Negligent Infliction of Emotional Distress

EPS correctly submits in its motion to dismiss, and Pitts concedes, that Oklahoma does not recognize negligent infliction of emotional distress as an independent tort. *See e.g. Kraszewski v. Baptist Med. Ctr. of Oklahoma, Inc.*, 916 P.2d 241, 243 n. 1 (Okla. 1996); *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1111 (10th Cir. 1999). While Oklahoma does not recognize negligent infliction of emotional distress as an independent tort, it "is in effect the tort of negligence." *Mason v. Bd. of Regents of the Univ. of Oklahoma*, 23 P.3d 964, 969 (Okla. Civ. 2001) (citing *Lockhart v. Loosen*, 943 P.2d 1074, 1081 (Okla. 1997)); *see also Wilson v. Muckala*, 303 F.3d 1207, 1213 (10th Cir. 2002) (negligent infliction of emotional distress is not an independent tort, but is in effect the tort of negligence).

Because negligent infliction of emotional distress is "in effect" the tort of negligence in Oklahoma, Pitts asks the Court to construe his negligent infliction claim as one for negligence. While this may be proper in some circumstances, it is entirely unnecessary here because Pitts has already asserted a cause of action for negligence in his Complaint. An additional claim for negligence would be superfluous and redundant. EPS's motion to dismiss Pitts' claim for negligent infliction of emotional distress is granted.

**WHEREFORE**, for the reasons set forth above, the Motion to Dismiss filed by defendant Electrical Power Systems, Inc. [Document No. 8] is hereby GRANTED.

**IT IS SO ORDERED** this 6th day of June 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma